I am here today on behalf of Jason Struberg. In my time with you, I would like to focus on two of the four issues that I raised in the brief, specifically the failure to give the entrapment instruction, which was ground one, and the imposition of unduly restrictive supervised release conditions, which is ground four. I'm not waiving the additional instruction argument in ground two or the sufficiency issue in ground three, but I will rest on the brief unless the court has specific questions about those issues. Turning to the entrapment issue, Mr. Struberg was caught in a sting operation, and while sting operations may be useful to identify actual sexual predators, the danger is that the curious but innocent person may be lured into that net, and the entrapment defense and the entrapment instruction protects against that situation. So to warrant an entrapment instruction, Mr. Struberg simply had to show that there was some evidence that he was induced to commit the crime by government agents and some evidence that he was not otherwise predisposed to commit the crime. Obviously, you don't need to prove that you were entrapped in order to get the instruction. If that were the standard, then you wouldn't need an instruction because you'd get a judgment of acquittal, and I mention that in part because at the trial, the government cited to the court the case of United States v. Dion in support of its intention that the instruction wasn't warranted. Dion is not an instruction case. It's a case about whether there was sufficient evidence to show entrapment, but the trial court said, well, I've looked at the Dion case, and I don't think I have to give an instruction. That really wasn't the issue in the Dion case. However, at this point, the government says, well, without citing the Dion case, well, the court got it right anyway in denying the instruction, and obviously, we disagree. Well, wasn't there a fair amount of propensity evidence in this case, given how quickly he that he had been involved in training minors in sexual activity before? I mean, isn't that enough propensity there that entrapment really isn't a valid defense in this case? I want to say two things about that. First of all, as the Gamache case, which I think is probably our strongest case, points out, and I think it cites another case, which I think is called Poll House. They're both in the brief, and I'm not sure which. The place where you measure predisposition is not what the person does after the inducement. I mean, assuming for the moment that there is inducement starts, it's before. And as I think one of the courts said, that's why it's called predisposition. So the fact that he enters into this conversation, I don't think is necessarily relevant. The other thing about it, he did say during the interchange that he'd done this before. He also testified in court and suggested that he has some learning disabilities and some emotional problems, and he denied in his sworn testimony that, in fact, he ever had any contact with minors. Now, I'm not saying that the jury was bound to believe that, but there was certainly evidence before the jury that he wasn't predisposed and had never done this before. But, counsel, what about the Internet search that he performed on the way to the arranged rendezvous? Wouldn't that alone justify the refusal to give the instruction? The Internet search where he says he discovered that it was not legal for him to... No, the Internet search on the way to the rendezvous where he was looking for other young minors to engage in sexual activity with. I guess maybe I'm misremembering the record. I thought what he was looking for was information about whether it was legal to do this. But, I mean, obviously, we remember the record differently. I don't think there was any evidence that he was looking for. He did run a search that certainly... I think the search was called Very Young Fuck. Just providing an opportunity to break the law is not inducement, right? That's right. So what is in this record in terms of what the undercover agent did that would allow a reasonable jury to conclude that this could possibly be inducement? What's your best evidence to support that? Well, I think partly, you know, first of all, the agent posted the ad. Isn't that just the opportunity, though? Sure. I think what the standard is is opportunity plus. So we'll talk about your plus. I didn't want to get to the opportunity. So that's the opportunity. I think the plus here is, first of all, the government agent was the first person to mention sexual activity. When you're saying... Are you calling birds and bees sexual activity? I am. I mean, I think the agent acknowledged that that was what he meant and that was certainly how it was taken. So I think that's part of it. And then went on to say, well, I want someone to train my daughter like my mother trained me. And I think pretty strongly encouraged the continuation of that conversation. And so, yeah, I do think that there's opportunity plus in what the agent did and didn't just sit back and say, well, I'll wait for Mr. Struberg to adjust everything. They went back and forth about what he should do and what... And Mr. Struberg said, you know, I really don't want to do anything you don't agree with. And the mother said, well, yeah, I'll agree with what you want to do. So I do think that there was opportunity plus and that that is enough to get us past the evidence of inducement. Now, you know, as I've said before, you know, that might not have persuaded the jury that there was inducement, but I think that was enough evidence to get him the instruction. And I guess the other things that I wanted to say about the lack of predisposition is again turning to what Mr. Struberg testified. He said, you know, that when he went to the scene, he did not have the intent to engage in any sexual activity with the minor. He just wanted to meet the mother. And again, you know, that's a credibility question for the jury, but it's also some evidence before the jury that he was not only not predisposed to do this, he wasn't even disposed to do it at that point. And he did explain his statements in his exchange with the officer about prior activity and denied them. The government offered absolutely no other evidence that Mr. Struberg had, you know, with the exception of the internet search that I guess we disagree about. There was no other evidence that he'd ever done this. And so, I mean, I think this is, I'd like to contrast for a minute the case that the government cites, which is the United States v. Young case in the government's brief and in my reply brief. I mean, that's really dramatically different. That's a case where the defendant reaches out to a decoy, spends a good while grooming the supposed minor for it, set up a meeting. And in this case, of course, Mr. Struberg had no contact with the fake daughter. He only had contact with the fake mother. So it's not like he's interacting with a minor. Mr. Young reserved a room at the hotel. When he gets there, he sort of other internet chats where he tried to pick up minors. So I don't have any quarrel with the court saying that Young didn't get an entrapment instruction, but I really don't think that's Mr. Struberg's case. He was drawn into this, I think, you know, pretty innocently by the officer and made some grandiose statements, but I don't think there's any evidence that would have happened but for the inducement. So we think that he was entitled to his requested entrapment instruction and therefore should be granted a new trial. And if there are more questions about that, I'd like to talk a little about supervised release. There are two issues in the supervised release order that I think are problematic and they have to do with computers and contact with minors. They weren't objected to. I keep telling my friends in the trial court that they ought to object to these, but I think in this case there's plain error. There was no explanation at all from the district, no individual explanation from the district court for these conditions. The closest anyone can come is the judge said, I sat through the trial and I reviewed the pre-sentence report, but all the pre-sentence report said was the following special conditions may be appropriate in this case. It didn't say to the judge, this is why we think these conditions are appropriate in Mr. Struberg's. And I think the case law is pretty clear. There have to be individualized findings for this kind of special condition. In support of plain error on that issue of unsupported conditions, I filed a 28-J letter last night and cited the additional cases. If I can make a suggestion to you, I don't know when these cases came out, but the 28-J was delivered to us about 20 minutes before. If you want us to be prepared, it would be helpful if we had it a few days ahead of time or more. I will do my best from now on and I apologize. Thank you. I kind of have to confess, I sent them when I found them and I thought that was better than later. It's hard for us to be prepared. And I know that the government has the opportunity to respond to, but I did want to bring them to the attention. Anyway, the one that has to do with this is the United States v. Hale and that's all I'm going to say about it. In terms of the computer issue, Mr. Struberg used his cell phone. That's the only thing he used. The officers didn't even seize his computers. And yet he now has a condition that says he can't possess any computer with access to any online computer service, which is pretty much all computers these days. Isn't nowadays a phone pretty much a miniature computer? You can do pretty much anything from your phone, or many people can, that they could do from their computer. Isn't it just kind of a miniature version of a stand-alone? Well, I mean, I guess, you know, it certainly didn't forbid him to possess a phone, although it did forbid him to have, it did require him to consent to unannounced examinations of his phone without any probable cause. And, you know, in light of his lack of record, I just don't think there's anything supporting that. And, I mean, I don't, I mean, maybe everybody else only uses their phones. I do a lot with my computer and I think most people do, and this really restricts that. It also requires him to pay for monitoring software. And I just don't think those are supported by any evidence in this case that would make that deprivation of liberty proper. The other, and my second case in the 28-J letter is Helena. It has to do with that. The other set of improper conditions concerns his residence and activities. It says he can't have any contact with minors under 18 without supervision of an adult approved by the probation office who knows of his conviction. And he can't live within 1,000 feet of schools, parks, playgrounds, public pools, or other locations frequented by children. And he's barred from places where minors congregate. Well, there are a couple problems with that. One is that it's pretty vague. I mean, does that mean he can't go to Walmart because there are a lot of kids there? I'm sorry to interrupt, but that's one of my questions. I know that you've got, I understand one of your arguments to be that there's not been an individualized determination as to whether these particular conditions are appropriate for your client. Is there also a vagueness argument here, or is that just sort of wrapped up in the connection? I think there's both. And to the extent that I didn't clearly make the vagueness argument, I'd like it considered. Because, you know, how are you supposed to know what, excuse me, where children congregate means? Now, I mean, Mr. Struberg is going to be required by Missouri law not to live within 1,000 feet of a school or a child care facility. And obviously we don't object to that. But this is much broader than that. And it doesn't give the probation officer any guidance as to what places he might be, they might be talking about, or him. Is that word congregate used in a, is that sort of a, I'll say, a standard special condition for these cases in the district to use the word congregate? My experience, I don't have a whole lot of data, but my experience is it certainly isn't unique to this case. Mr. Miller may know better than I the answer to that question. But I don't, I mean, these are kind of, you know, they're kind of plugged in. Some of them even said, some of the conditions even said you rather than he, as though they'd been plugged in from another order. So in summary, what I'd like the court to do is based on ground three, which is sufficiency challenge to, to vacate his conviction and order acquittal based on grounds one and two, to grant him a new trial and based on ground four in the alternative to either strike those conditions or remand for resentencing properly. Very well. Thank you. May it please the court. Good morning, your honors. My name is Larry Miller. I'm here on behalf of the United States Appeal. I was also trial counsel in the matter below. And I would like to address, as you know, there's four issues on the appeal and Ms. Carlisle addressed the issue about the court's denial of the request for the entrapment instruction and the supervised release. And I will respond to those. As the court is aware, the issue on entrapment is simply whether or not the government, there was evidence that the government induced Mr. Struberg to commit the crime. And if so, even if that was the case, which we argue that clearly was not, whether or not the government showed he was predisposed to commit the offense. And your honors, as you, I think as Judge Kelly mentioned, inducement is more than just the opportunity to commit the crime. And in this particular case, I think it is very clear that there was no inducement under that legal definition by the government, the undercover officer, to induce Mr. Struberg to commit this crime. It started, as you're well aware in the facts with the single ad by the undercover, single mom needs help from discreet man to help teach daughter no games, W4M. There's no mention of specific sex at this point, etc. There's an immediate response from Mr. Struberg, send number, talk details. And then his response was, what do you want to teach her? And at that point, the undercover answered disciplined respect and birds and bees stuff. From there, within an hour, Mr. Struberg has stated that he wants to meet the mother and the daughter, for them to dress as instructed, to take mom, take them to the mom's bedroom, use a belt on the 14-year-old, and have sex with the 14-year-old while the mom is tied up. And despite, I think what Ms. Carlisle stated, the detective responded, never thought of you having sex with the daughter, only talking to her about it. And Mr. Struberg did not stop there. He then went into the specific sexual acts, as the court knows, actually texted a contract. This is all the contract as to exactly what he would do with the daughter, which were specific sex acts. He wanted to do it quickly. He wanted to do it this week. The next day, they talk further that he will use condoms. Again, the night before, he's very specific as to what he wants to do, and they set it up for the next day. This all happens just quickly over a three-day period. They set it up to meet at a hotel. He suggests a hotel. He suggests the meeting, and he actually goes, of course, to the hotel. I know you're quite well aware of the facts, but it's very interesting to note that prior to this, he was specific about saying, I've trained girls before. He commented about she was young. I've trained girls before with or without sex. And then, of course, on the day of the event in which he's arrested, he goes to the convenience store. He's surveilled buying condoms. He's also wearing a red shirt, and he was told by the undercover, acting as a 14-year-old, that red was her favorite color. And to top that off, on the way, and doing a search on his phone, and Judge Kress may be referring to this, but he does also put in a search for very, very young, the F word, at the time, which clearly, again, shows he was not induced to commit this crime, and that it also shows very much that he was clearly predisposed to commit this particular offense. What about the phrases, the birds and the bees? It seems as if it is agreed upon that indicated sexual activity. Mother says she's 14. What about those initial statements? Maybe it's not a lot, but is it enough to get to a jury to determine, let the jury decide? Because we clearly have a government agent. Right, right. That particular statement, as he explained, he did not state any specific sexual activity by this, and his description was about talking to her about the birds and the bees, and that's where it left. And after that, he never, ever, the undercover suggested what they would do, when they would do it, how they would meet. As a matter of fact, as I mentioned, and I know you're familiar with the record, he specifically says when Mr. Struber comes out with all these items and all these specific sexual acts that he wants to do, the response from the undercover is, it's not, hey, that's great. It's, hey, I never thought about you having sex with her, only talking to her about it. So he just takes it to a whole other level. So I don't think that one comment itself is evidence of inducement. I think that's just part of the initial reaction to the question, which Mr. Struber seized on immediately, once the posting came out on the thing. The issue of, you know, and she mentioned, Ms. Karloff mentioned about intent, and it's true that the only time that Mr. Struber ever, the only evidence that he didn't have any intent was his statement on his direct examination that he didn't intend to have sex. Obviously, it's our position that the evidence was so overwhelming of his intent, given all the things that he had stated, the fact that he showed up, the fact that he bought condoms, the fact that he's doing the search for very, very young, blank, on his way to the hotel to meet the mother and the daughter is clear evidence of his intent. Obviously, that goes to the sufficiency argument that she raises on the intent issue. So for that matter, I think that the evidence is just very, very clear that there is no, was no inducement and there clearly was. Even if there was, which we maintain there wasn't, clearly the government showed beyond a reasonable doubt that Mr. Struber was predisposed to commit this crime. His mother even mentioned in her testimony, not her testimony, but in the jail calls about, haven't you learned your lesson before? She mentions other females. So clearly that is further evidence that he has obviously some involvement, not saying those are minors by any means, but clearly that's part of the record here. But again, the really telling thing are all the very explicit, and it's all there. There's really no issue about what was said by anyone here. It's all on text. The very specific things that he had done, how he had done it before, how he had done it before, and had done something similar that hadn't gone well for him. But he was very much in tune to meet this young lady and to have very explicit sex with her. Your Honor, as to the supervised release issues, the conditions, first of all, this was not, as you know, this was not objected to at trial. So this would be reviewed for a plain error analysis. Both at the sentencing, Mr. Struberg and his counsel were asked if they had any objections, and neither one of them had any. As a matter of fact, Mr. Struberg said to the court that he understood that trying to meet a 14-year-old was against the law, and he apologized for it, just asked for no lifetime supervision. The standard, as you know, is these conditions have to be reasonably relevant. The liberty deprivation should be reasonable, no more than necessary, and consistent with the sentencing guideline or sentencing standards. And I know there's an individual assessment, but Judge Wyme said that he was there for the trial, and I'm quoting, and you tried to entice a minor. So I know that wasn't a long explanation, but I think that was clearly very succinct, very telling as to his concern about Mr. Struberg. And then as far as the conditions that were set, I think that they are appropriate. I do apologize because on the letter that she submitted, I have not seen that. I didn't check the filing this morning, so I should have checked that. So I don't know about the 28-J letter, so I . . . Well, you can respond to it. Thank you. I really appreciate it. I will absolutely look at that and then follow up. Judge, I would like to have you address Special Condition E, if you could, and tell me whether or not you can distinguish this case from a special condition that was vacated by this very similar special condition, and it has to do with contact with minors. Right. One second, Your Honor. I numbered mine different than the letters for my . . . I just want to make sure I'm addressing . . . E. The defendant shall not possess or use any computer or electronic device . . . Is that the one? I'm referring to the one that says the defendant will not associate or have any contact with persons under the age of 18. That's how it begins, except in the presence of a responsible adult. Unless written consent is granted by the probation office, is that correct? There has to be, in the presence of a responsible adult, approved by the probation office. It's not identical to Banner, but it's similar. I'm sorry. I'm following you now. You know, I'm not . . . in terms of Banner, I'm not fully aware of that particular case, so . . . It just seemed to me that in your briefs, the government provided very little defense of that and no case support. I think on Bender, it's my understanding on that one that the district court not only failed to make individualized findings, which I think in this case, given the fact that what Judge Wimes stated about the fact that he tried to have sex with a fourteen-year-old and this would be anybody under eighteen, clearly would address that. I think that in that case, I think the court, if I recall on Bender, is that they consider the defendant part of a class of defendants versus as an individual. I think that Judge Wimes, again, I know it was a short statement, but the fact that he specifically said you tried to have sex with a fourteen-year-old took that out of that. I think that makes it more personal and specific to Mr. Struber as opposed to Bender. What about the condition that uses the word congregate? It's one thing to identify particular places, schools, playgrounds that are identified, daycare centers. It's another to say congregate. How is an individual supposed to appreciate where children might be congregating and frankly, what's a congregation of children? I appreciate your question because I think you touched base on the vagueness issue with that or the vagueness concern with that. I do think that that term, and I haven't looked at every supervised release condition that's been issued in our district in a similar case, but I think that that is a term that has been used. I'm not aware of that coming up before, but I think that it's that common sense term of congregate meaning the typical traditional places like schools, that sort of nature. Obviously, you could have people congregate at a party, at a house, and I understand that, but I think that that's what the focus is of that in terms of the traditional places where the young people of that age might assemble. If we're having to have a conversation about this word, is it vague? Is it too troubling to expect an individual to know how to abide by that particular condition? Your Honor, I don't think that based upon the common sense, without defining congregate, I think that based upon the traditional common knowledge of where children would congregate, I think that that's a sufficient description. Could it be better? I'm sure we could argue it could be better, but I don't think it's so vague that, oh my gosh, where would this be? I think it's pretty much traditionally understood that it would be areas of schools and other meeting places, churches, whatever that you might have them congregate, a basketball game, a sporting event, things like that where you'd have for young people where that would be the issue. I appreciate your question, and again, could it be better defined? I'm sure certainly we could argue that, but I think it's sufficient given the traditional meaning. Okay, Your Honor. Thank you, Mr. Miller. Well, thank you very much. Okay, well, first of all, I found the search we were talking about. It's in volume two, page 155. It is, if you look at its URL, it is a search for videos, so I think there is nothing in the record to suggest that he had visited a site that would allow him to look for other minors, so I did want to clarify that. Wouldn't it, though, show his predisposition to have interest in sexual activities with minors? Well, maybe, but interest in sexual activities with minors is one thing, and a predisposition to seek them out is really quite another, and he's accused here of looking at pornography, and I think there's some pretty good case law that just because you look at pornography doesn't mean that that means that it's not the same thing as doing what's suggested here. Can I say one more thing? Very quickly. Okay. I just don't think you tried to entice a minor as an individualized finding. That was what he was charged with, and it doesn't say anything very specific about him, so that's my other argument about the supervised release. Thank you. Very well. Ms. Carlisle, the court appreciates you're accepting the appointment, and we appreciate both counsel's arguments today. The case is submitted and will be decided in due course.